**LEE LITIGATION GROUP, PLLC**
C.K. Lee (CL 4086)
148 West 24th Street, Eighth Floor
New York, NY 10011
Tel.: 212-465-1188
Fax: 212-465-1181
*Attorneys for Plaintiff and the Class*

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

-----------------------------------------------------------x
MOKHTAR NASERI,
*on behalf of himself and all others similarly situated*,

                    Plaintiff,

           - against -

ODE A LA ROSE, INC.,

                    Defendant.
-----------------------------------------------------------x

Case No.

**CLASS ACTION COMPLAINT**

JURY TRIAL DEMANDED

Plaintiff MOKHTAR NASERI (hereinafter "Plaintiff" or "Plaintiff NASERI"), on behalf of himself and all others similarly situated, by his undersigned attorneys, as for his Complaint against the Defendant, ODE A LA ROSE, INC., alleges the following:

## NATURE OF ACTION

1. This action is brought by Plaintiff NASERI on behalf of himself and all consumers in the United States who have received unsolicited and unconsented-to commercial text messages to their mobile phones from ODE A LA ROSE, INC. (herein "Defendant" or "ODE A LA ROSE") in violation of the Telephone Consumer Protection Act 47 U.S.C. § 227 et seq.

1

**JURISDICTION AND VENUE**

2. The Court has federal question jurisdiction over this action under 28 U.S.C. § 1331 because this action arises out of a violation of federal law - 7 U.S.C. § 227(b). *See Mims v. Arrow Fin. Serv.*, LLC 132 S. Ct. 740 (2012).

3. Venue is proper in this District under 28 U.S.C § 1391 because Defendant's violation of the Telephone Consumer Protection Act (TCPA) took place in this District, where Plaintiff NASERI received automated text messages to his phone.

**PARTIES**

*Plaintiff*

4. Plaintiff NASERI resides in Queens County.

*Defendant*

5. Defendant, ODE A LA ROSE, is a flower business and delivery service with a principle address at 120 West 28th Street, Suite 2N, New York, New York 10001 and a registered agent and address for service of process located at Corporation Service Company 80 State Street, Albany, New York 12207.

**FACTUAL ALLEGATIONS**

**The Telephone Consumer Protection Act**

6. The Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227 *et seq*., was enacted by Congress in 1991 and is implemented by the Federal Communications Commission ("FCC"). In its June 18, 2015 Declaratory Ruling and Order ("2015 TCPA Order"), the FCC explained the original purposes of the TCPA:

> As its very name makes clear, the Telephone Consumer Protection Act is a broad "consumer protection" statute that addresses the telemarketing practices not just of bad actors attempting to perpetrate frauds, but also of "legitimate businesses" employing calling practices that consumers find objectionable… The TCPA makes

2

it unlawful for any business—"legitimate" or not—to make robocalls that do not comply with the provisions of the statute. While the Commission has traditionally sought to "reasonably accommodate[] individuals' rights to privacy as well as the legitimate business interests of telemarketers,"…, we have not viewed "legitimate" businesses as somehow exempt from the statute, nor do we do so today.

2015 TCPA Order ¶ 2 n.6

7. The 2015 TCPA Order also explained the continuing relevance of the TCPA, especially in connection with wireless consumers:

Month after month, unwanted robocalls and texts, both telemarketing and informational, top the list of consumer complaints received by the Commission. The Telephone Consumer Protection Act (TCPA) and our rules empower consumers to decide which robocalls and text messages they receive, with heightened protection to wireless consumers, for whom robocalls can be costly and particularly intrusive… With this Declaratory Ruling and Order, we act to preserve consumers' rights to stop unwanted robocalls, including both voice calls and texts, and thus respond to the many who have let us, other federal agencies, and states know about their frustration with robocalls.

2015 TCPA Order ¶ 1

8. The TCPA makes it "unlawful for any person… to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice… to any telephone number assigned to a paging service, cellular telephone service… or any service for which the called party is charged for the call…" 47 U.S.C. § 227(b)(1)(A)(iii).

9. "Prior express content" requires:

an agreement, in writing, bearing the signature of the person called that clearly authorizes the seller to deliver or cause to be delivered to the person called advertisements or telemarketing messages using an automatic telephone dialing system or an artificial or prerecorded voice, and the telephone number to which the signatory authorizes such advertisements or telemarketing messages to be delivered.

47 C.F.R. § 64.1200(f)(8)

3

10. In addition, the written agreement must include a clear and conspicuous disclosure informing the signer that:

> By executing the agreement, such person authorizes the seller to deliver or cause to be delivered to the signatory telemarketing calls using an automatic telephone dialing system or an artificial or prerecorded voice;

§ 64.1200(f)(8)(i)(A)

and

> The person is not required to sign the agreement (directly or indirectly), or agree to enter into such an agreement as a condition of purchasing any property, goods, or services.

§ 64.1200(f)(8)(i)(B)

11. The 2015 TCPA Order reaffirmed the FCC's longstanding position that text messages qualify as "calls" under the TCPA. ¶107.

12. Additionally, the 2015 TCPA Order confirmed that text messages which originate from the Internet fall within the ambit of the TCPA's prohibitions. The text and legislative history of the TCPA revealed "Congress's intent to give the Commission broad authority to enforce the protections from unwanted robocalls as new technologies emerge." ¶ 113

**Defendant Violated the TCPA**

13. Prior to receiving a text message from Defendant, Plaintiff NASERI made a purchase from Defendant's website. He was required to input his basic contact information in order to make his purchase at odealarose.com.

14. Plaintiff NASERI never gave consent to receive automated text messages at any point in the purchasing process. Even though Plaintiff NASERI did no consent to such messages after his purchase with Defendant, on February 13, 2020, Plaintiff NASERI received a text from Defendant promoting its products and services and encouraging him to make a purchase:

4



15.     The impersonal nature of the messages sent to Plaintiff NASERI from a short code number shows that ODE A LA ROSE uses an auto dialer/texter to send its messages. Short code numbers are widely used in automated services.[1] The word automation is defined in the dictionary as "the technique, method, or system of operating or controlling a process by highly automatic means, as by electronic devices, reducing human intervention to a minimum"[2]. Defendant does not send messages to its customers on an individual basis that requires human intervention for each message sent. Defendant's unsolicited messages and the process is automated

16.     Defendant sent similar unsolicited marketing texts using an automated telephone texting system to other similarly situated persons, who likewise never consented to receiving them.

17.     The text messages sent to Plaintiff NASERI were unwanted, annoying, and a nuisance. Plaintiff NASERI would often expect important messages, updates, and had to open his

---

[1] https://www.techopedia.com/definition/22052/short-code

[2] http://www.dictionary.com/browse/automation

phone to Defendant's invasive messages instead. In order to identify the sender, Plaintiff would have to unlock his phone and view the actual messages. The messages were disruptive and diminished the Plaintiff's usage and enjoyment of his phone. The Second Circuits recent decision has acknowledged that such non-financially related injury allegations are enough to support standing under the TCPA; *See Mejia v Time Warner Cable, Inc.*, 2017 US Dist LEXIS 120445 [SDNY Aug. 1, 2017, No. 15-CV-6445 (JPO)].) Plaintiff NASERI has a concrete injury sufficient to confer Article III standing. *See Van Patten v Vertical Fitness Group, LLC*, 847 F3d 1037(9th Cir. 2017) ("Unsolicited telemarketing phone calls or text messages, by their nature, invade the privacy and disturb the solitude of their recipients. A plaintiff alleging a violation under the TCPA "need not allege any additional harm beyond the one Congress has identified."); *Melito v. Am. Eagle Outfitters, Inc.*, No. 14-CV-2440 (VEC), 2017 U.S. Dist. LEXIS 146343 (S.D.N.Y. Sep. 8, 2017).

## CLASS ACTION ALLEGATIONS

18. Plaintiff NASERI seeks to represent a class consisting of:

    All persons in the United States who, beginning four years prior to the filing of this action, received unsolicited text messages to their cellular phones from Defendant[3] (the "Nationwide Class")

19. In the Alternative, Plaintiff NASERI seeks to represent a class consisting of

---

[3] See Fitzhenry-Russell v. Dr. Pepper Snapple Grp., No. 17-cv-00564 NC, 2017 U.S. Dist. LEXIS 155654, at *15 (N.D. Cal. Sep. 22, 2017) ("Yet the Supreme Court did not extend its reasoning to bar the nonresident plaintiffs' claims here, and Bristol-Myers is meaningfully distinguishable based on that case concerning a mass tort action, in which each plaintiff was a named plaintiff.");In re Chinese-Manufactured Drywall Prods. Liab. Litig., No. 09-2047, 2017 U.S. Dist. LEXIS 197612, at *52-53 (E.D. La. Nov. 28, 2017) ("it is clear and beyond dispute that Congress has constitutional authority to shape federal court's jurisdiction beyond state lines to encompass nonresident parties" and interpreting Bristol-Meyers as barring nationwide class actions where jurisdiction over defendant is specific "would require plaintiffs to file fifty separate class actions in fifty or more separate district courts across the United States — in clear violation of congressional efforts at efficiency in the federal courts."); Horton v. USAA Cas. Ins. Co., 266 F.R.D. 360, 364 (D. Ariz. 2009) ("Objectors argue that this Court lacks jurisdiction to certify a nationwide class. This argument is frivolous. A federal court applying Rule 23 of the Federal Rules of Civil Procedure may certify a nationwide class if the requirements for certification are satisfied.").

> All persons in New York who, beginning four years prior to the filing of this action, received unsolicited text messages to their cellular phones from Defendant (the "New York Class")

20. The proposed Classes exclude current and former officers and directors of Defendant, members of the immediate families of the officers and directors of Defendant, Defendant's legal representatives, heirs, successors, assigns, and any entity in which it has or has had a controlling interest, and the judicial officer to whom this lawsuit is assigned.

21. Plaintiff reserves the right to revise the Class definition based on facts learned in the course of litigating this matter.

22. Class members are so numerous that joinder of all members is impracticable. While the exact number of Class members is unknown to Plaintiff at this time and can only be ascertained through the appropriate discovery, Plaintiff believes that there are thousands of Class members, who may be identified from records maintained by Defendant or by their own record of text messages. These members may be notified of the pendency of this action by mail, or by advertisement, using the form of notice customarily used in class actions such as this.

23. Plaintiff's claims are typical of the claims of all Class members as all Class members are similarly affected by Defendant's wrongful conduct.

24. Plaintiff will fairly and adequately protect the interests of Class members because Plaintiff has no interests antagonistic to theirs. Plaintiff has retained experienced and competent counsel.

25. A class action is superior to other available methods for the fair and efficient adjudication of this controversy. Since the damages sustained by individual Class members may be relatively small, the expense and burden of individual litigation make it impracticable for Class members to individually seek redress for the wrongful conduct alleged herein. If class treatment

of these claims were not available, Defendant would likely be able to persist in its unlawful conduct with impunity.

26. Common questions of law and fact exist as to all Class and predominate over any questions solely affecting individual Class members. Among the questions of law and fact common to the Classes are:

    a. whether Defendant sent unsolicited marketing text messages to cellular phones belonging to Plaintiff and the Classes;

    b. whether Defendant used an automated telephone texting system to do so;

    c. whether text recipients provided their prior express consent;

    d. whether Defendant's conduct is intentional or negligent; and

    e. whether Plaintiff and the Classes are entitled to damages for Defendant's conduct.

27. Class membership is readily ascertainable from electronic records.

28. The prosecution of this action as a class action will reduce the possibility of repetitious litigation. Plaintiff knows of no difficulty which will be encountered in the management of this litigation which would preclude its maintenance as a class action.

29. A class action is superior to other available methods for the fair and efficient adjudication of this controversy. The damages suffered by any individual class member are too small to make it economically feasible for an individual class member to prosecute a separate action, and it is desirable for judicial efficiency to concentrate the litigation of the claims in this forum. Furthermore, the adjudication of this controversy through a class action will avoid the potentially inconsistent and conflicting adjudications of the claims asserted herein.

30. The prerequisites to maintaining a class action for injunctive relief or equitable relief pursuant to Rule 23(b)(2) are met, as Defendant acts or refuses to act on grounds generally

applicable to the Classes, thereby making appropriate final injunctive or equitable relief with respect to the Classes as a whole.

31. The prerequisites to maintaining a class action for injunctive relief or equitable relief pursuant to Rule 23(b)(3) are met, as questions of law or fact common to the Classes predominate over any questions affecting only individual members and a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.

32. The prosecution of separate actions by Class members would create a risk of establishing inconsistent rulings and/or incompatible standards of conduct for Defendant. Additionally, individual actions may be dispositive of the interest of all members of the Class, although certain members of the proposed Class are not parties to such actions.

33. Defendant's conduct is generally applicable to the Class as a whole and Plaintiff seeks, *inter alia*, equitable remedies with respect to the Class as a whole. As such, Defendant's systematic policies and practices make declaratory relief with respect to the Classes as a whole appropriate.

## CAUSES OF ACTION

### COUNT I

### VIOLATION OF THE TELEPHONE CONSUMER PROTECTION ACT
### 47 U.S.C. § 227 *et seq*.

**(Brought on behalf of Plaintiff and Class)**

34. Plaintiff NASERI realleges and incorporates herein by references the allegations contained in all preceding paragraphs and further alleges as follows:

35. Plaintiff NASERI brings this claim individually and on behalf of the other members of the Class for Defendant's violations of the TCPA.

36. Defendant directly or vicariously violates the TCPA when it uses an automated telephone texting system to send unsolicited and unauthorized marketing texts to the cellular phones of Plaintiff and the Class.

37. The TCPA, 47 U.S.C. § 227(b)(3), provides:

**(1)** Private right of action. A person or entity may, if otherwise permitted by the laws or rules of court of a State, bring in an appropriate court of that State--

**(A)** an action based on a violation of this subsection or the regulations prescribed under this subsection to enjoin such violation,

**(B)** an action to recover for actual monetary loss from such a violation, or to receive $ 500 in damages for each such violation, whichever is greater, or

**(C)** both such actions.

38. Additionally, the TCPA provides that the Court may, at its discretion, treble the statutory damages if it finds that Defendant's violation are willful or knowing. 47 U.S.C. § 227(b)(3)

39. Defendant's violations of the TCPA were willful and knowing. Defendant would be liable to Plaintiff and the Class even if their actions were negligent.

40. Defendant should also be enjoined from engaging in similar unlawful conduct in the future.

41. Accordingly, Plaintiff and the Class are entitled to all damages referenced herein, attorney's fees, costs, treble damages, injunctive relief, and any other remedies allowed by the TCPA.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, on behalf of himself and all others similarly situated, prays for relief and judgment against Defendant as follows:

(A) For an Order certifying the Class under Rule 23 of the Federal Rules of Civil Procedure and naming Plaintiff as representative of the Class and Plaintiff's attorneys as Class Counsel to represent members of the Class;

(B) For an Order declaring that Defendant's conduct violates the TCPA;

(C) For an Order finding in favor of Plaintiff and members of the Class;

(D) For statutory or treble damages for each violation of the TCPA, as determined by the evidence presented at trial;

(E) For prejudgment interest on all amounts awarded;

(G) For an Order enjoining Defendant from further violations of the TCPA;

(H) For an Order awarding Plaintiff and members of the Class their reasonable attorney's fees and expenses and costs of suit; and

(I) For such other and further relief as the Court deems just and proper.

## **DEMAND FOR TRIAL BY JURY**

Pursuant to Rule 38(b) of the Federal Rule of Civil Procedure, Plaintiff, on behalf of himself and the Class, demands a trial by jury on all questions of fact raised by this Complaint.

Dated: February 24, 2020

                Respectfully submitted,

                **LEE LITIGATION GROUP, PLLC**

                By: /s/ C.K. Lee
                    C.K. Lee, Esq.

                C.K. Lee (CL 4086)
                148 West 24th Street, Eighth Floor
                New York, NY 10011
                Tel.: 212-465-1188
                Fax: 212-465-1181
                *Attorneys for Plaintiff and the Class*